UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

MICHAEL B. KINGSLEY,

        Plaintiff,

vs.                                  Case No. 13-CV-432

KEVIN RADDATZ,

        Defendant.

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In the fall of 2011, plaintiff, Michael B. Kingsley ("Kingsley"), was incarcerated at the Monroe County Jail (the "Jail") prior to his conviction for possession of cocaine. While he was an inmate at the Jail, Kingsley was housed in a single cell and managed to acquire three mattresses for his bed without authorization. When the defendant, Officer Kevin Raddatz ("Officer Raddatz"), discovered that Kingsley had three mattresses, he asked Kingsley to return one of them. Kingsley mocked Officer Raddatz and repeatedly refused to give Officer Raddatz one of his three mattresses. While Officer Raddatz waited for the mattress, Kingsley suddenly threw the mattress at Officer Raddatz, pushing him backwards from the open cell door. As Officer Raddatz tried to protect himself and to restrain Kingsley, Kingsley pulled away from him and the two men fell onto Kingsley's bed. Officer Raddatz regained his balance, managed to put Kingsley in a compliance hold, and escorted him to a receiving cell. Kingsley admits "sliding/ tossing" the mattress at Officer Raddatz, and admits that he did not give officer Raddatz any warning that the mattress would be delivered to him as a projectile. However, Kingsley now says that immediately after he and Officer Raddatz fell onto his bed, but before he was placed in

a compliance hold, he was struck in the neck.  Apart from force that was necessary to place Kingsley in a compliance hold, Officer Raddatz did not strike Kingsley.  Kingsley admits that he did not see Officer Raddatz strike him, and further admits that he is not even certain that Officer Raddatz struck him intentionally.  Nevertheless, Kingsley sued Officer Raddatz for excessive force.

Officer Raddatz is entitled to summary judgment because the only force applied by Officer Raddatz was used to gain control of Kingsley's hands after he threw a mattress, and because there is no sound evidence to suggest that Kingsley was ever struck at all, much less that he was struck intentionally.  Officer Raddatz is also entitled to summary judgment for the additional and independent reason that not every push or shove violates the constitutional rights of jailed inmates.  In addition, Kingsley's claim against Officer Raddatz in his "official capacity" is actually a claim against Monroe County, and must fail because Kingsley does not even plead the requisite showings to establish liability for Monroe County under *Monell*.  Finally, although this Court need not retain jurisdiction over Kingsley's claim under the Wisconsin Constitution, that claim also fails on the merits because Kingsley is not entitled to any more protections at the Jail under the Wisconsin Constitution than he is afforded under the U.S. Constitution.

Because all of Kingsley's claims are legally defective and because no reasonable jury could find that he was subjected to excessive force, summary judgment in favor of Officer Raddatz is appropriate.

## STATEMENT OF FACTS

For a complete statement of the undisputed and material facts, Officer Raddatz respectfully refers the Court to the Proposed Findings of Fact in Support of Defendant's Motion for Summary Judgment ("Def.'s PFOF") filed along with this motion for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to "dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). For this reason, summary judgment is best regarded as "an integral part of the Federal Rules . . . which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* at 327 (internal citation omitted). The way in which unsupported claims are disposed is to enter judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Claims that are unsupported in light of the requirements of Rule 56 fail as a matter of law.

When the party moving for summary judgment presents evidence in support of its motion, the mechanics of a summary judgment motion switch the burden to the non-moving party. Specifically, it becomes the non-movant's responsibility to demonstrate a genuine dispute of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . ." In practice, the Seventh Circuit teaches that "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (internal quotation marks omitted).

If the non-moving party cannot make a sufficient evidentiary showing on each element of a claim, the movant is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Evidentiary showings are insufficient to survive summary judgment if they are "merely colorable," or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 252 (1986). Instead, a non-movant can only defeat summary judgment with a demonstration

of "definite, competent evidence," and cannot rely on "mere speculation" requiring courts to draw unreasonable inferences. *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001). Hearsay and unsworn statements are likewise insufficient to survive summary judgment. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). Similarly, a witness's professed inability to recall a fact does not make that fact a disputed one. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002). Finally, the burden to make a factual showing to survive summary judgment is squarely on the non-movant; it is not the responsibility of the judiciary to "scour the record" in search of evidence to defeat a summary judgment motion. *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## ARGUMENT

**I.   KINGSLEY'S EXCESSIVE FORCE ALLEGATIONS UNDER THE FOURTEENTH AMENDMENT FAIL AS A MATTER OF LAW.**

**A.   As a matter of law, Kingsley cannot establish an excessive force claim against Officer Raddatz under the Fourteenth Amendment.**

**1.   Kingsley's burden under the Fourteenth Amendment.**

The Supreme Court rejects the idea that all excessive force claims are governed by the same standard. According to the Supreme Court, "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The Seventh Circuit has identified three different constitutional protections that apply to convicted prisoners, pretrial detainees, and arrestees. *Kinney v. Indiana Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991); *Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir. 1990).

At all times relevant to Kingsley's complaint, he had already been arrested, arraigned, and was detained as an inmate in the Jail while awaiting trial for possession of cocaine. (Def.'s PFOF ¶¶ 3-4; Kingsley Dep. 4.) Because Kingsley was a pretrial detainee, the Due Process

Clause of the Fourteenth Amendment standard applies to his excessive force lawsuit. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Due Process Clause of the Fourteenth Amendment provides broader protection than the Eighth Amendment, which prohibits only punishment that is cruel and unusual. *Id.* at 744 (citing *Wilson v. Williams*, 83 F.3d 870, 874 (7th Cir. 1996)). However, "the exact contours of any additional safeguards" provided by the Fourteenth Amendment above and beyond the protections of the Eighth Amendment "remain undefined" by the Supreme Court. *Id.* at n. 5 (internal citation omitted); *see also Wilson*, 83 F.3d at 875.

The Seventh Circuit reads the Fourteenth Amendment to "protect[ ] against only abusive conduct that is more than negligence." *Kingsley v. Hendrickson*, 744 F.3d 443, 450 (7th Cir.), *petition for reh'g denied* (Apr. 18, 2014). Accordingly, the Seventh Circuit has said that the relevant legal inquiry is "whether a particular action was taken 'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 538). The Seventh Circuit requires Fourteenth Amendment § 1983 excessive force plaintiffs to prove an intent to punish – not merely an intent to act – if they aim to establish any liability whatsoever. *Wilson*, 83 F.3d at 875; *Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir. 1991). To that end, the Seventh Circuit has repeatedly held that "the search for 'punishment' <u>cannot be wholly objective</u>." *Titran* at 147 (emphasis added). And, although the Seventh Circuit occasionally employs some objective criteria in its analysis, it has also said that "we also recognize, quite clearly, the need for a subjective inquiry into the defendant's state of mind in performing the activity under scrutiny." *Kingsley* 744 F.3d at 751-52.

While it is certain that a pretrial detainee plaintiff must prove at least reckless conduct, the Seventh Circuit has consistently approved a higher and more demanding standard for pretrial detainees that more closely tracks the Eighth Amendment. *See*, *e.g.*, *Wilson* 83 F.3d at 875 ("to

prevail on a Fourteenth Amendment claim, a plaintiff must prove that the defendant(s) 'acted deliberately or with callous indifference, evidenced by an actual intent to violate [the plaintiff's] rights or reckless disregard for his rights'") (quoting *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988)); *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir. 1986) (employing a subjective deliberate or callous indifference standard).  At the very least, it is Kingsley's burden to prove deliberate or at least criminally reckless conduct.  *See*, *e.g.*, *Daniels v. Williams*, 474 U.S. 327, 334-35 (1986); *Archie v. City of Racine*, 847 F.2d 1211, 1218-20 (7th Cir. 1988).

### 2. The only force used against Kingsley was to control his hands after the threw a mattress at Officer Raddatz.

Here, the only force actually established by the record was contact made by Officer Raddatz in an attempt to control Kingsley's hands after Kingsley threw a mattress at him.

According to Kingsley, on the morning of September 25, 2011, he was lying on his bed several hours after breakfast had been delivered to him in his cell. (Def.'s PFOF ¶¶ 9 & 11; Kingsley Dep. at 21.)  Kingsley admits that he had managed to acquire three mattresses for his bed. (Def.'s PFOF ¶ 19; Kingsley Dep. at 21.)  Kingsley admits that Officer Raddatz came to his cell and repeatedly asked for the mattress.  Kingsley also admits both that he did not want to give Officer Raddatz one of his three mattresses, and that he repeatedly refused to do so. (Def.'s PFOF ¶¶ 12-13 & 15-18; Kingsley Dep. at 21.)  During the entire encounter with Officer Raddatz, Kingsley's cell door was open, and Kingsley was not shackled or restrained in any other way. (Def.'s PFOF ¶ 14; Kingsley Dep. at 26.)  In fact, Officer Raddatz was standing several feet away from Kingsley, who – while lying on his bed – continually refused to comply with Officer Raddatz's requests for one of Kingsley's three mattresses. (Def.'s PFOF ¶¶ 16-18.)  Ultimately, it was Kingsley – not Officer Raddatz – who became upset. (Def.'s PFOF ¶¶ 20-21.)  Realizing that Kingsley was upset, Officer Raddatz told Kingsley he was sorry to have to take

the third mattress away. (Def.'s PFOF ¶ 21; Raddatz Decl. at 15.) As Kingsley rose from his bed, he mocked Officer Raddatz's apology. (Def.'s PFOF ¶ 22; Raddatz Decl. ¶ 16.) Then, Kingsley suddenly heaved the mattress at Officer Raddatz without any warning, surprising Officer Raddatz and pushing him backwards and away from the cell door. (Def.'s PFOF ¶¶ 24-25; Kingsley Dep. at 24.)

Kingsley's sudden pitching of the mattress startled Officer Raddatz, who attempted to protect himself while simultaneously restraining Kingsley. (Def.'s PFOF ¶ 24; Raddatz Decl. ¶ 20.) Due to his training as a certified jailor, at the instant the mattress was hurled at him with Kingsley behind it, Officer Raddatz understood that Kingsley might be starting an attack. (Def.'s PFOF ¶ 26; Raddatz Decl. ¶ 19.) As Officer Raddatz tried to restrain Kingsley in the doorway of the cell, Kingsley actively tried to fight off Officer Raddatz's hold by trying to pull away from him. (Def.'s PFOF ¶ 29; Kingsley Dep. at 34.) When Kingsley wrenched himself away from Officer Raddatz, both Kingsley and Officer Raddatz fell onto Kingsley's bed. (Def.'s PFOF ¶ 30.) After a brief struggle, Officer Raddatz was able to control Kingsley's arms and to place him in an escort hold. (Def.'s PFOF ¶ 31; Raddatz Decl. ¶ 22; Kingsley Dep. at 36.) With Kingsley subdued, Officer Raddatz escorted him through the hallway and into a receiving cell. (Def.'s PFOF ¶ 32; Kingsley Dep. at 35-36.)

Even viewed in the light most favorable to Kingsley, the facts show that all physical contact between Kingsley and Raddatz occurred in a very short amount of time between Kingsley's decision to throw the mattress and when Raddatz gained control of Kingsley's hands, who was actively resisting. (Def.'s PFOF ¶¶ 24-32.) Those facts are not enough to prove excessive force because they do not show intent to punish, but in fact prove exactly the opposite: force used solely as "an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538.

### 3. Kingsley's evidence that he was even struck at all is speculative and insufficient.

Kingsley, of course, claims that he was struck once by Raddatz after the two fell to Kingsley's bed. But this allegation is based upon speculation, and Kingsley cannot establish that he was even struck at all. The Seventh Circuit rejects excessive force claims with merely speculative facts. *See*, *e.g.*, *Abdullahi v. City of Madison*, 423 F.3d 763, 770 (7th Cir. 2005) ("we refuse[] to indulge . . . logic akin to the doctrine of *res ipsa loquitur*") (citing and quoting *Brownell v. Figel*, 950 F.2d 1285 (7th Cir. 1991). Indeed, Kingsley's lawsuit is not based on the scuffle in the doorway of the cell after he hurled the mattress at Officer Raddatz. Nor is Kingsley's lawsuit against Officer Raddatz based on their fall onto his bed. Kingsley does not even challenge Officer Raddatz's compliance hold to extract Kingsley and place him in a receiving cell. The only alleged action that Kingsley says is the basis of his lawsuit is an unseen contact by Raddatz below Kingsley's ear. (Def.'s PFOF ¶¶ 34-38; Kingsley Dep. at 36-37.) But Officer Raddatz did not strike Kingsley. (Def.'s PFOF ¶ 35.) Kingsley even admits that he did not see Officer Raddatz strike him. (Def.'s PFOF ¶ 37; Kingsley Dep. at 39.) Although Kingsley complained of pain in his neck, medical staff found no evidence of an injury requiring treatment or even advanced diagnostic tests. (Def.'s PFOF ¶¶ 41-42.) While the Supreme Court has said that *de minimis* injuries will not generally support a claim for excessive force[1] (*see Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)), Kingsley's claim fails at the threshold because the act he alleges did not take place: Raddatz did not strike Kingsley, and no force was used against Kingsley other than what was necessary for Officer Raddatz to gain control of Kingsley's hands and put him in a submission hold for escort to a receiving cell. (Def.'s PFOF ¶¶ 30-31.)

---

[1] Kingsley's lawsuit also fails on *de minimis* injury grounds, as this brief later explains in § I(A)(5).

> **4. Even if there was contact between Officer Raddatz and Kingsley, it was unintentional and incidental to placing Kingsley in a compliance hold.**

Regardless, Kingsley cannot prove that his Fourteenth Amendment rights have been violated when there is no evidence to even suggest any contact by Officer Raddatz with Kingsley's neck was intentional. To prove a claim of excessive force, Kingsley must at least prove that Officer Raddatz acted deliberately. *Wilson*, 83 F.3d at 875. Because the touchstone of a pretrial detainee's rights is protection from punishment, the Seventh Circuit has said that pretrial detainee plaintiffs cannot establish liability with merely objective criteria. *Titran*, 893 F.2d at 147. Mere negligent application of force on Kingsley is insufficient to create liability for Officer Raddatz. *Kingsley v. Hendrickson*, 744 F.3d at 450. In fact, even gross negligence is insufficient to establish excessive force in a pretrial detention setting. *Id.* (citing *Archie*, 847 F.2d at 1219). Therefore, Kingsley cannot establish liability against Officer Raddatz without evidence that the single contact he alleges transcended gross negligence.

Kingsley's own admissions make clear that – at maximum – any contact with Officer Raddatz was inadvertent and incidental to Officer Raddatz's attempt to restrain him. Kingsley does not challenge the constitutionality of the force applied by Officer Raddatz during the attempt to control Kingsley's arms. (Def.'s PFOF ¶ 34; Kingsley Dep. at 37.) Kingsley does not challenge the constitutionality of the tumble onto his bed. (Kingsley Dep. at 36-37.) Kingsley does not challenge the constitutionality of Officer Raddatz's submission hold. (Def.'s PFOF ¶ 34; Kingsley Dep. at 37.) Kingsley does not challenge the constitutionality of being removed from his housing cell and placed in a receiving cell. *Id.* Instead, the sole basis for Kingsley's entire lawsuit is one alleged moment that he was struck below his left ear during a time period of a few seconds after the two men fell onto Kingsley's bed. (Def.'s PFOF ¶ 34; Kingsley Dep. at 37.)

But Kingsley has already admitted that there is no proof that Officer Raddatz meant to strike him. Kingsley admits that he did not see Officer Raddatz make contact with him. (Def.'s PFOF ¶ 37; Kingsley Dep. at 38.) Kingsley merely speculates that Officer Raddatz hit him with his fist, and says that it is a "possibility" that Officer Raddatz was angry with him. (Def.'s PFOF ¶ 38; Kingsley Dep. at 39.) Kingsley admits that he is not sure why Officer Raddatz would have wanted to strike him. (Def.'s PFOF ¶ 38; Kingsley Dep. at 39.) Kingsley further admits that he does not know why Officer Raddatz would have struck Kingsley in the way that Kingsley claims. (*Id.*) And Officer Raddatz denies ever striking Kingsley, and, at minimum, denies doing so intentionally. (Def.'s PFOF ¶¶ 35-36; Raddatz Decl. ¶ 26.) In fact, the only thing Kingsley is certain about is that sometime after the two men fell onto his bed, but before Officer Raddatz gained control of Kingsley's arm, he was struck in the upper left part of his neck. In other words, even if Officer Raddatz did make contact with Kingsley, Kingsley himself admits he is uncertain about what that contact was, how it happened, or why it happened. Indeed, any contact to Kingsley's neck was purely incidental to Officer Raddatz's attempt to get control of him. (Def.'s PFOF ¶ 36.)

Even if all of these facts are viewed in the light most favorable to Kingsley, including the threshold issue of whether he was struck at all, they would scarcely constitute negligence. Kingsley stakes his entire claim on an alleged contact with his neck, the mechanics and impetus of which he professes to be uncertain. The Supreme Court and the Seventh Circuit expressly forbid Kingsley from establishing a violation of the constitution on those facts and without any evidence of intent on the part of Officer Raddatz. *Wilson*, 83 F.3d at 875; *Salazar,* 940 F.2d at 239. Because the Fourteenth Amendment does not protect Kingsley from negligence or even gross negligence, but only from actions intended to punish him in violation of his Fourteenth Amendment rights, Kingsley's speculation about how and why there was contact with his neck is

not sufficient to establish a constitutional violation.  Therefore, because no reasonable jury could find that Kingsley's Fourteenth Amendment rights were violated by unintentional contact during the attempt to restrain a resisting inmate who admits to throwing a mattress, Officer Raddatz is entitled to summary judgment.

### 5. Kingsley's claim also fails independently because the contact was *de minimis* and he received no discernible injury.

Kingsley's claim is rightly disposed of at summary judgment for the additional and independent reason that the injury he alleges is *de minimis* and does not implicate the U.S. Constitution.  To the same effect, the Supreme Court has explained that "an inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973); *Outlaw v. Newkirk*, 259 F.3d 833, 840 (7th Cir. 2001); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994).  The requirement of more than *de minimis* touching applies equally to pretrial inmates in detention as it does to convicted prisoners.  *See*, *e.g.*, *Anderson-EL v. O'Keefe*, 897 F. Supp. 1093, 1097 (N.D. Ill. 1995).

By definition, Kingsley's purported injury was *de minimis*.  According to Kingsley, his neck pain was similar to the sensation of a crick in his neck from poorly positioned sleeping.  (Def.'s PFOF ¶ 39; Kingsley Dep. at 41.)  Although Kingsley complained that he was in pain and was taken out of the Jail and to a clinic, a medical doctor assessed him and determined that the injury did not merit treatment beyond ibuprofen and ice packs.  (Def.'s PFOF ¶¶ 44-45; Kingsley Dep. at 45.)  Kingsley was not x-rayed, and a neck brace was not deemed to be appropriate.  (Def.'s PFOF ¶ 42; Kingsley Dep. at 44-45.)  Even Kingsley admits that the discomfort lasted only a few days and that he sought no additional treatment during that time and had no subsequent medical problems.  (Def.'s PFOF ¶¶ 46-48; Kingsley Dep. at 48.)

As a matter of law, Kingsley's injury falls far short of other injuries previously deemed to be *de minimis* in this circuit.  For example, in *Outlaw*, the Seventh Circuit found that an inmate who sustained "severe pain, swelling, and bruising" from a door slot hatch closing on his hand suffered only a "*de minimis* injury."  *Outlaw*, 259 F.3d at 839.  Similarly, in *DeWalt v. Carter*, 224 F.3d 607, 619-20 (7th Cir. 2000), the Seventh Circuit held that an inmate who was shoved into a door frame and bruised his back sustained a *de minimis* injury.  Critical to the reasoning in *DeWalt*, and equally applicable in Kingsley's case was that a single, isolated shove was insufficient to establish a constitutional violation.  *Id.*  The only fact upon which Kingsley stakes his entire lawsuit is an alleged unseen blow to his neck that occurred only once – if at all – and did not require any substantial medical treatment or even advanced medical evaluation.  (Def.'s PFOF ¶ 41-48; Kingsley Dep. at 44-45.)  The Supreme Court has said that excessive force claims over a *de minimis* injury are generally insufficient.  *Hudson*, 503 U.S. at 9-10.  Because Kingsley's purported injury is unserious even compared only to other *de minimis* injuries in this judicial circuit, no reasonable jury could find that he was subjected to excessive force.  As such, Officer Raddatz is entitled to summary judgment.

      **B.**    **Kingsley cannot sue Officer Raddatz because he is entitled to qualified immunity.**

The doctrine of qualified immunity protects public actors from lawsuits where their conduct does not violate established constitutional rights of which a reasonable person would have been aware.  *Mitchell v. Forsyth*, 472 U.S. 511, 524-26 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The purpose of qualified immunity is to advance the "public interest in encouraging the vigorous exercise of official authority" by protecting officials performing discretionary functions.  *Harlow*, 457 U.S. at 807 (internal quotations omitted).  In other words, qualified immunity acts as a buffer for people performing discretionary official functions by assuring them that they "will not be held personally liable as long as their actions are reasonable

in light of current American law." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987).  Created by the judiciary, the doctrine of qualified immunity "stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions."  *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

Because of its important aim and function, qualified immunity protection should be resolved "at the earliest possible stage of litigation," and is not a question of fact in the province of a jury.  *Anderson*, 483 U.S. at 646 n.6; *Rakovich v. Wade*, 850 F.2d 1180, 1201-02 (7th Cir. 1988).  For these reasons, qualified immunity is properly resolved at summary judgment. *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 582-83 (7th Cir. 1989).

The crux of qualified immunity is whether an official's actions were reasonable, assessed in light of the legal rules clearly established at the time of those actions.  *Harlow*, 457 U.S. at 818-19.  The Supreme Court has identified two critical questions in the consideration of qualified immunity:  (1) do the facts as established show that the defendant violated a constitutional right; and (2) was that right clearly established at the time of its violation?  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Under *Pearson*, the order in which these questions are answered are purely the discretion of the district court, and a negative answer to either one of them is sufficient to establish the defense of qualified immunity.  *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009) (citing *Pearson*); *see also Chaklos v. Stevens*, 560 F.3d 705, 711 (7th Cir. 2009).  The plaintiff bears the burden to prove a clearly established constitutional right violated by the public official.  *Clash v. Beatty,* 77 F.3d 1045, 1047 (7th Cir. 1996).  The Seventh Circuit characterizes the plaintiff's burden as a heavy one, explaining that "[w]hen reasonable minds could differ . . . in the qualified immunity context the balance favors the *movant*."  *Ellis v. Wynalda*, 999 F.2d 243, 246 n.2 (7th Cir. 1993) (emphasis added).

Officer Raddatz submits to this Court that Kingsley's constitutional rights were not so clearly established at the instant Kingsley threw a mattress at him and during his attempts to place Kingsley in a compliance hold that a reasonable correctional officer would have necessarily known that he was violating the Fourteenth Amendment if presented with the same scenario. Understood in conjunction, the fact that Kingsley admits repeatedly flaunting the orders of Officer Raddatz given in good faith and in the interest of running the Jail in a peaceful and orderly way, admits using the mattress as a projectile without advance warning to Officer Raddatz, and admits that the compliance hold itself did not violate his constitutional rights conclusively show that a reasonable correctional officer would not have understood that Kingsley's constitutional rights were being violated by attempting to gain control of Kingsley's hands. At minimum, reasonable corrections officers would disagree as to whether a single strike would be reasonable under the circumstances at issue in this lawsuit. Therefore, Officer Raddatz is entitled to qualified immunity.

**II.     Because Kingsley's claim against Officer Raddatz in his "official capacity" offends the Supreme Court's rule in *Monell*, summary judgment is also appropriate on that claim.**

**A.     The *Monell* standard.**

Kingsley also attempts to sue Officer Raddatz in his "official capacity" as an employee of the Monroe County. (Compl. ¶ 3.) Such claims are properly understood as a suit against the County itself. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

However, the rule is that municipalities are not liable under § 1983 on *respondeat superior* theories. *Calhoun v. Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005) (citing and quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The Seventh Circuit has identified only three ways in which a municipality may violate 42 U.S.C. § 1983:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not

> authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional inquiry was caused by a person with 'final decision policymaking authority.'

*Calhoun*, 408 F.3d at 379 (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

Other than the three specific instances identified in *Calhoun*, there is no other way to prove that a municipality is liable under § 1983. Moreover, the Supreme Court commands that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Kingsley cannot prevail on his claim against Monroe County unless he follows the rule against municipal liability from *Monell*, and as that rule is strictly applied in the Seventh Circuit.

### B. Kingsley's suit does not plead any facts and has not adduced any evidence to support a claim against Monroe County.

#### 1. Kingsley does not plead or identify any facts that an express policy of Monroe County violated his Fourteenth Amendment rights.

Kingsley has not pled or put forward any facts demonstrating that an express policy of Monroe County violated his Fourteenth Amendment rights. In the Seventh Circuit, "[t]he express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun*, 408 F.3d at 379. *Monell* demands that plaintiffs suing under the express policy theory of *Monell* identify the *specific* policy that *caused* the deprivation of a constitutional right. *See*, *e.g.*, *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Kingsley does not identify any policy at all in his Complaint that caused a violation of his constitutional rights. If Kingsley expects an inference to be drawn that such a policy exists absent any proof, the Supreme Court's rule from *Monell* makes clear that such any such inference is forbidden. Therefore, as a matter of law, Kingsley cannot establish liability against Monroe County under the "express policy" theory.

### 2. Kingsley does not plead or identify any facts that a widespread custom or practice of Monroe County violated his Fourteenth Amendment rights.

Kingsley has neither pled nor put forward any facts demonstrating that a widespread pattern or practice caused his Fourteenth Amendment rights to be violated. In order to establish a "widespread practice" for the purposes of municipal liability, *Monell* plaintiffs must show that the same problem has arisen so many times in the past that the government has accepted the outcome as if it were an express policy. *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Calhoun*, 408 F.3d at 380) ("'[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work'"); *see also Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995) ("The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and . . . must have encouraged or at least condoned . . . the misconduct of subordinate officers.") Because Kingsley does not allege or indicate any facts outside of the single alleged contact with his neck, an attempt to establish liability of Monroe County fails as a matter of law.

### 3. Kingsley does not plead or identify any facts showing that person with final decision policymaking authority at Monroe County violated his Fourteenth Amendment rights.

Kingsley has never alleged that Officer Raddatz had final policymaking authority for Monroe County, much less provided any fact that would establish that he did. Officer Raddatz is a jailor and does not have final policymaking authority in Monroe County or even at the Jail itself. (Def.'s PFOF ¶ 8; Raddatz Decl. ¶ 4.) That fact forecloses Kingsley from establishing *Monell* liability through the "final decision policymaking authority" route.

Kingsley fails to plead or establish facts that could even theoretically create liability for Monroe County, and there are no other routes by which liability for Monroe County could be established. As laid out in the preceding paragraphs, Kingsley's claim against Officer Raddatz in his official capacity is legally defective under the only three ways in which municipal liability attaches. For these reasons, judgment as a matter of law for the defense is appropriate on Kingsley's claim against Officer Raddatz in his official capacity.

### III. KINGSLEY'S STATE CONSTITUTIONAL CLAIM ALSO FAILS AS A MATTER OF LAW

#### A. The continued exercise of federal jurisdiction over Kingsley's Wisconsin law claim is unnecessary.

For federal courts exercising original jurisdiction, the rule from 28 U.S.C. § 1367(a) is that "the district court[] shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." However, under § 1367(c)(3), district courts may rightly decline to exercise supplemental jurisdiction over a claim or claims if "the district court has dismissed all claims over which it has original jurisdiction."

For the reasons laid out in this brief, Kingsley's federal claims that his Fourteenth Amendment rights were violated fail as a matter of law. Consequently, Kingsley's federal claims must be dismissed with prejudice pursuant to Fed. R. Civ. P. 56. Absent any other federal connection to the case, this Court, under its § 1367(c)(3) authority, may decline to exercise jurisdiction over Kingsley's remaining state law claim. *See*, *e.g.*, *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993); *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993).

> **B.**     **Kingsley's Wisconsin claim also fails on the merits because the Wisconsin Constitution does not provide more protection to pretrial detainees than the U.S. Constitution.**

The Wisconsin Constitution does not provide Kingsley with any more protection than he is entitled to under the Fourteenth Amendment of the U.S. Constitution. The Supreme Court of Wisconsin has explained that:

> It is well settled by Wisconsin case law that the various freedoms preserved by sec. 1. art. I, Wis. Const., *are substantially the equivalent* of the due-process and equal-protection-of-the-laws clauses of the Fourteenth amendment to the United States constitution

*Martin by Scoptur v. Richards*, 531 N.W.2d 70 (Wis. 1995) (emphasis added) (internal quotations omitted). Kingsley cannot identify anything to the contrary in the Complaint, and Officer Raddatz is entitled to summary judgment on all Kingsley's federal claims, as the preceding sections of this brief have made clear. Therefore, although this Court need not even extend jurisdiction over Kingsley's Wisconsin Constitution claim at all, should it choose to do so Kingsley's claim fails as a matter of law because his rights under Section 1, Article I of the Wisconsin Constitution are substantially equivalent to his due process rights under the Fourteenth Amendment. Because Kingsley's federal claims fail, his Wisconsin claim likewise fails.

## CONCLUSION

For these reasons, defendant Kevin Raddatz submits that this Court should grant his motion for summary judgment and dismiss plaintiff's claims against him in their entirety, together with such other and further relief that may be just and appropriate under the circumstances.

Dated this 28th day of April, 2014.

s/ Andrew A. Jones
Andrew A. Jones
Benjamin W. Dyer
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI  53202-3819
(414) 271-2300  Phone
(414) 223-5000  Fax
ajones@whdlaw.com
bdyer@whdlaw.com

Attorneys for Defendant